Richard James Doyle, an Infant, by Richard John Doyle, His Guardian, et al., Respondents, v. Maria Dapolito et al., Appellants. (Action No. 1.)

Leonard Boughton, Appellant, v. Angelo Dapolito et al., Respondents. (Action No. 2.)

Fourth Department, February 27, 1964.

*Winchell, Goldwater & Connors* (*Richard H. Connors* and *Paul K. Lange* of counsel), for Leonard Boughton, appellant.

*William A. Specht* for Angelo Dapolito and another, appellants in Action No. 1 and respondents in Action No. 2.

*John B. McCrory* and *Harold J. Stiles* for Richard James Doyle and, another, respondents.

NOONAN, J. The defendants, Dapolito and Boughton, appeal from a judgment based on a jury verdict which awarded damages in favor of each of the plaintiffs, Doyle. The plaintiff, Boughton, also appeals from a judgment dismissing his complaint against the defendants, Dapolito, based on a jury verdict in their favor of no cause of action.

The only claim of the defendant, Boughton, is that the cross-examination of his witness, one Allen, went beyond the bounds of permissible inquiry and was prejudicial to his substantial rights and thus constituted reversible error.

A brief review of the facts is necessary. On June 4, 1960 about 12:30 A.M., the infant plaintiff, Richard James Doyle, was one of 10 passengers in an automobile being driven by defendant, Angelo Dapolito, with the consent of its owner the defendant, Maria Dapolito. As the car was proceeding westerly from Lyons, New York to Newark, New York, on New York State Route No. 31, a two-lane highway, it overturned at a point where the road curved to the south. The car came to rest crossways in the road facing south on its top and entirely upon the paved portion of the highway.. Within a minute or a minute and a half, the defendant, Boughton, also driving his car in a westerly direction, struck the overturned Dapolito vehicle.

A sharp question of fact as to Boughton's negligence and as to whether the infant plaintiff, Doyle, received any injuries as the result of the collision in which Boughton was involved was present. No one testified as to actually seeing Doyle struck by

either vehicle at the time of the second accident. Indeed, there was some proof that he was not. The position of the infant plaintiff in the highway after the first accident and before the second, was therefore of untmost importance. At the trial three witnesses, also passengers in the Dapolito car, placed Doyle at or near the center of the road at this time. One of these witnesses was Priscilla Wolfe. Her testimony at trial was extremely important to the plaintiffs in their attempt to establish that Doyle was injured as the result of the second accident. Her direct examination was strongly favorable to the plaintiffs' contention in this regard. Upon cross-examination she was confronted with a transcript of an interview as to how the accident happened in which she participated three days following the accident. The defendant, Boughton, claimed that her version then was much different than her testimony given at trial with respect to, among other things, the position of Doyle after the first accident. She denied giving some of the vital answers as to the position of Doyle after the first accident at the time of this interview. As part of his case, the defendant, Boughton, called Justus S. Allen, a retired court reporter, to read from his original notes her answers which she denied at trial as he recorded them at the interview.

The following cross-examination by the attorney for the plaintiffs, Doyle, then ensued: " Q. By whom were you paid, sir, for this service?

" Mr. Connors: I object to that, if the Court please.

" The Court: Overruled.

" Mr. Connors: Exception.

" The Witness: Paid by the company that I was hired to come down with Mr. Gianforti.

" Q. You were hired by a company? A. Yes.

" Q. Your answer is yes? A. Yes, sir.

" Q. Which company was that, sir?

" Mr. Connors: I object to that, if your Honor please. Mr. McCrory knows ———.

" The Court: Overruled. Who employed him is a proper subject of inquiry.

" The Witness: The Allstate Insurance Company.

" Q. And do you know what Allstate Insurance Company's connection with this case was?

" Mr. Connors: I am going to object to that, if Your Honor please. It has no bearing on this lawsuit.

" The Court: Overruled.

" Mr. Connors: Exception.

" The Witness: Why they —— I believe their connection was that they carried the insurance of one of the parties involved in the accident.

" Q. That was Mr. Boughton, wasn't it?

" Mr. Connors: I object to that.

" The Court: Overruled. It is a question of who was represented.

" The Witness: Yes.

" The Court: —— by the person that employed this witness is material.

"Q. Who was Mr. Gianforti, Mr. Allen? A. He represented the Allstate Company. Investigator.

" Q. He was an investigator for Allstate? A. For the Allstate Company, yes, sir.

"Q. And was employed by a company that had a financial interest in the answers to these questions? Isn't that correct? A. I would assume so, yes, sir."

It is this proof which the defendant, Boughton, says went beyond the bounds and prejudiced his substantial rights.

Without question, the plaintiffs were entitled to establish the interest and any possible bias of this witness as bearing upon his credibility and to assist the jury in scrutinizing, weighing and evaluating his testimony. This would be proper even though as an incident, it brought forth responses which indicated the defendant was insured. Such proof is limited, however, to a narrow scope. It may not be pursued to establish or buttress the truthfulness of testimony of some other witness at trial. Certainly such proof cannot be adduced in a manner which may result in prejudice in the minds of the jurors even though the inquiry is a proper one. (*Di Tommaso* v. *Syracuse Univ.*, 172 App. Div. 34, 37, affd. 218 N. Y. 640.)

If counsel for the plaintiffs had ceased his inquiry after establishing the interest of Allen and the court had made clear to the jury the limited purpose of this proof, we might well reach a different conclusion even though the name of Boughton's insurance carrier came out. This, however, was not the case. Counsel continued by inquiring as to Gianforti. He was not a witness. His credibility was not for the jury. The sole basis for the proof was to show Allen's interest and possible bias as bearing upon the believability of his testimony. The cross-examination beyond this, including three further references to Boughton's insurance carrier by name (one by the attorney for the plaintiffs repeating an answer) whether calculated or innocent, cannot be considered harmless. This was a diversionary tactic which diluted, beclouded and may have eliminated the sharp question

of credibility as to the witness Wolfe. It was unnecessary and prejudicial in view of the close question on vital issues of fact. (*Kuznicki* v. *Kuszowski*, 2 A D 2d 216.)

The judgment against Boughton should, therefore, be reversed and a new trial granted. In the interests of justice, the judgment against the defendants, Dapolito, and the judgment in their favor and against the plaintiff, Boughton, should also be reversed and a new trial granted.

We do not reach or pass upon the contentions of the defendants, Dapolito, that the verdict in favor of the infant plaintiff, Doyle, was excessive.

WILLIAMS, P. J. (dissenting). The majority of this court take the position that not only were the questions concerning Allstate Insurance Company improper, but that they were seriously prejudicial. We agree that the questions were improper, but we find no indication of prejudice. Any determination that they did, in fact, affect the jury's verdict adversely to the defendants is pure speculation.

Prejudice is not indicated in any way in the amount of the verdict. In fact, the defendant Boughton, who raises the point of the impropriety of the questions, does not claim that the amount awarded is excessive.

Boughton was clearly negligent, but the question of what injuries were sustained by the infant plaintiff Doyle as the result of such negligence is more difficult. However, on this question there was ample proof from which the jury could have arrived at the determination that he was jointly responsible for such injuries.

In these days everyone knows that all drivers have, or should have, insurance. We have passed far beyond the time when the mere mention of insurance before the jury creates prejudicial error. In this case the majority emphasize the fact that not only was insurance mentioned, but that the name of the carrier was brought out during the cross-examination. For this reason it is said prejudice was created, but, as we have observed, this is highly speculative. This large carrier, doing an extensive nationwide business, may well have had policyholders on the jury, or at least some who thought highly of the company and its reputation. The name of the carrier might, in fact, have benefited the defendant in some respects; this may be why the verdict was moderate in amount.

Inasmuch as the verdict is not contrary to the weight of evidence and was in no way excessive, and as no resulting prejudice is shown or indicated from the record, we view the

questions as improper, but not as creating reversible error. We therefore would affirm the judgments.

BASTOW and DEL VECCHIO, JJ., concur with NOONAN, J.; WILLIAMS, P. J., dissents and votes to affirm, in an opinion in which GOLDMAN, J., concurs.

Judgments reversed on the law and facts and in the interest of justice and a new trial granted, with costs to abide the event.